UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WILLIAM STEWART STEELE,

           Petitioner,

v.                                          Case No. 5:04-cv-331-Oc-10GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

           Respondent.
_____

## ORDER DENYING PETITION

Petitioner, an inmate in the custody of the Florida Department of Corrections (DOC), initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The Petition stems from a March 2002 prison disciplinary report (DR) and conviction at Lake Correctional Institution, for which Petitioner was punished with 30 days' disciplinary confinement, but no loss of accrued gain time. Petitioner unsuccessfully pursued administrative and state-court remedies regarding the DR before filing the instant Petition. Petitioner asserts that he was denied due process in several respects in connection with the DR. Upon due consideration of the pleadings and the parties' exhibits, the Court concludes that the Petition must be denied.[1]

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. See Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

## **Factual and Procedural History**

On March 19, 2002, Petitioner was charged with violating Fla. Admin. Code § 33-210.101(11), which states that "[n]o inmate may establish or conduct a business through the mail during his period of incarceration." The charging DR was prepared by Officer J.D. Brogden, and states in pertinent part that:

> On 3-19-02 at approximately 10:00 a.m., I received information that inmate Steele . . . was running a self help legal business through the mail. See attached forms of this self help legal business which was created by inmate Steele . . . ."

Resp. Exh. A. The business at issue concerns the publication and distribution of the "Self Help Legal Guides" (SHLG) authored by Petitioner and marketed and distributed by Petitioner's mother, Betty Dunleavy.[2] The DR that is the subject of the Petition was prompted by mail directed to Petitioner by Mrs. Dunleavy in which Mrs. Dunleavy forwarded SHLG advertisements to Petitioner for his review and input. See Pet. App. Vol. 1, tab 1, exh. C. The mail was intercepted by prison officials before reaching Petitioner.

Petitioner gave a statement to investigator Officer S.G. Parker denying that he was engaged in running a business, and explaining that he had transferred all interest in the business aspects of the SHLG to Mrs. Dunleavy and "only advise her

---

[2]The SHLG has been the subject of previous civil rights and habeas corpus cases in this Court. See Self Help Legal Guides et al. v. Brogden, Case No. 5:03-cv-91-Oc-10GRJ, Doc. 136 (Order granting summary judgment to defendants) (July 19, 2004); Steele v. Sec'y, Fla. Dept. of Corrections, Case No. 5:03-cv-200, Doc. 30 (Order denying habeas corpus petition) (Aug. 8, 2006).

on the materials I wrote." Pet. App. Vol. 1, tab 10, exh. A-5. Mrs. Dunleavy also provided verbal and written statements to Officer Parker explaining that she was the owner of the SHLG and Petitioner received no benefit from the business. Id. exh. A-6; tab 1, exh. C and D.

Following a hearing, at which Petitioner declined staff assistance, Petitioner was found guilty. See Resp. (Doc. 14), attachment 1. As the written basis for the guilty finding, the DR states:

> Based on the fact that inmate Steele did materially participate in a business with his mother. I/M Steele states that he did write a book while in prison, which he mailed to his mother which is the basis for the business.

After unsuccessfully pursuing administrative appeals of the DR, Petitioner filed a petition for a writ of mandamus in the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida. Pet. App. Vol. 1, tab 1. As grounds for relief, Petitioner argued that the administrative review process was flawed in several respects, that the DR conviction should be vacated because there was no evidence to support the conviction, that the conviction violated his First Amendment right to free speech by punishing him for writing a book, and that his due process rights were violated because he had no knowledge that the mail had been sent to him and he never received it. Id. at 4-5.

After receiving the Respondent's response to the Petition, the state court initially denied the petition without first giving Petitioner an opportunity to reply. See Resp. (Doc. 21-6), exh. 5. The state court subsequently vacated its order and

3

allowed Petitioner additional time to reply. Petitioner filed motions for extension of time, a reply, and a motion to submit a supplemental claim asserting that prison officials had withheld evidence in violation of Brady v. Maryland.[3] Pet. App. Vol. 1, tabs 17 and 18. The state court found that Petitioner's responses were not timely and did not address the supplemental claim Brady on the merits. See Resp. (Doc. 21-6), exh. 5.

The state court found that "Petitioner has established and conducted a business through the mail while incarcerated, in violation of [Rule] 33-210.101(10)." Id. The state court based its finding on Petitioner's admission that he wrote the SHLG while incarcerated and was to act as advisor to his mother regarding marketing, distributing, and updating the SHLG. Id. The state court rejected Petitioner's assertion that he was entitled to mandamus relief because the DR was written in retaliation for his exercise of his First Amendment rights, stating that not only did Petitioner have "another remedy available to him to pursue such a claim," but that "[e]ven more fundamentally, Petitioner has failed to demonstrate that he has any right, much less a clear legal right, to conduct a business through the mail while incarcerated." Id. The state court further found that "[e]ven though Petitioner is life-sentenced and lost no gain time, he received due process in his disciplinary proceedings, and the evidence was adequate to support the charge." Id. (citing Wolff v. McDonnell, 418 U.S. 539 (1974); Superintendent v. Hill, 472 U.S. 445

---

[3] 373 U.S. 83 (1963).

(1985)). The Fifth District Court of Appeal denied certiorari on the merits, without opinion. Resp., Doc. 21-7. This Petition followed.[4]

### Petitioner's Claims

Petitioner asserts the following grounds for relief in the Petition: (1) Prison officials withheld evidence in violation of Brady; (2) A biased official denied his appeal on administrative review; (3) The DR was intended to punish him for writing a book and unconstitutionally chilled the exercise of his First Amendment rights; (4) His due process rights were violated when he was punished for mail he did not know was coming and did not receive; (5) There was no evidence to support the conviction. Doc. 1.

### Standard of Review

A state prisoner may seek federal habeas review of the loss of gain time as a result of a state prison disciplinary proceeding that allegedly violates his due process rights, but such habeas review is governed by the restrictions set forth under 28 U.S.C. § 2254. Medberry v. Crosby, 351 F.3d 1049, 1054 (11th Cir. 2003). Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), the role of a federal habeas court when reviewing a state prisoner's petition pursuant to 28 U.S.C. § 2254 is limited. See Williams v. Taylor, 529 U.S. 362, 403-404 (2000). Specifically, pursuant to § 2254(d)(1), the writ may issue only if (1) the state court's

---

[4]Respondent concedes that the Petition is timely under 28 U.S.C. § 2244(d).

adjudication resulted in a decision that "(1) 'was contrary to . . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) "involved an unreasonable application of . . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 412-13 (quoting 28 U.S.C. § 2254(d)(1)).

In view of these governing standards, a federal court may not undertake a *de novo* review of the merits of a claim that a petitioner's due process rights were violated in connection with a prison disciplinary case. Rather, Medberry requires that the district court review a claim only to determine whether the state court's application of clearly established federal law was unreasonable. Medberry, 351 F.3d at 1054 n. 5.

The Supreme Court has held that when a prison disciplinary proceeding may result in the loss of time credits, a prisoner is entitled to the following three procedural protections: (1) advance written notice of the charges and at least 24 hours to prepare a defense; (2) an opportunity, consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his own behalf; and (3) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action. Wolff, 418 U.S. 539, 563-66. Due process standards are satisfied if the findings of the disciplinary officer are supported by "some evidence." Superintendent, Mass. Corr. Inst., 472 U.S. at 455.

In the initial response to the Petition, Respondent asserted that Petitioner's disciplinary conviction did not result in the loss of any gain-time and thus under Medberry the Petition should be denied or dismissed as moot because Petitioner has completed the sentence of disciplinary confinement. Doc. 14. It is questionable whether Petitioner's loss of the eligibility to earn incentive gain-time during his disciplinary confinement triggered due-process protections. See, e.g., Luken v. Scott, 71 F.3rd 192, 193 (5th Cir. 1995) (mere opportunity to earn good-time credits does not constitute constitutionally cognizable liberty interest sufficient to trigger protection of due process clause). However, in reply to Respondent's argument Petitioner points to an unpublished Eleventh Circuit decision in a previous habeas corpus case filed by Petitioner. In that case, the Court noted that "[a]lthough Steele is serving a life sentence with a 25-year mandatory minimum that cannot be reduced by gain time, he can accrue gain time so that in the event his life sentence is commuted to a term of years, the accumulated gain time will be applied to his sentence." Steele v. Ducat, No. 98-2782, slip op. at 5 n.1 (11th Cir. Sept. 9, 1999). The Court determined that Petitioner had stated a claim for habeas relief where he alleged that a disciplinary sanction imposed by the prison had adversely affected his eligibility to accrue gain time. Id. at 2. Based on this authority, this Court directed the Respondents to address the merits of Petitioner's due process claims. Doc. 18. Assuming that Petitioner's loss of eligibility to earn gain time for the 30-day term of administrative confinement triggered due process protections, it is apparent that

Petitioner received all process due him.

**Fair Notice and Sufficiency of the Evidence (Petitioner's Grounds 4 and 5)**

The state court made a factual finding that Petitioner had engaged in the prohibited conduct of conducting a business by mail based upon Petitioner's own admissions that he wrote the SHLG while incarcerated, and was to act as advisor to his mother regarding marketing, distributing, and updating the SHLG. Resp. (Doc. 21-6) exh. 5. In Petitioner's Petition for a Writ of Mandamus in the state court, he admits that as a "condition" of relinquishing his copyright in the SHLG to Mrs. Dunleavy, "Petitioner is to act as a non-profiting advisor to Mrs. Dunleavy's marketing, publishing, and revising later editions of the [SHLG]." Pet. App. Vol. 1, tab 1.

The AEDPA directs that the factual findings of the state court are afforded a presumption of correctness that can only be rebutted by clear and convincing evidence.[5] Petitioner has failed to point to any clear and convincing evidence to rebut the state court's factual finding. Petitioner contends that the ads mailed to him by Mrs. Dunleavy do not amount to evidence that he was conducting her SHLG business. See Doc. 1 at 18. But, as the state court found, he admitted that he was to act as Mrs. Dunleavy's advisor and Mrs. Dunleavy gave a statement that she mailed the commercial advertisements to Petitioner for his review and input. Pet. App. Vol. 1, tab 10, exh. A-6, tab 1 exh. C and D. The state court's implicit

---

[5] See 28 U.S.C. § 2254(e)(1).

conclusion that the regulation was sufficiently broad to encompass mail directed to an inmate, rather than just mail sent by an inmate, is an interpretation of state law that is entitled to deference.[6]  It is apparent that at least "some evidence" existed to support the disciplinary conviction.

Moreover, the Court disagrees that Petitioner did not have fair notice that such an application of the regulation was possible.  Familiar notions of fair notice apply in the prison disciplinary context: "'Because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'"  Adams v. Gunnell, 729 F.2d 362, 368-69 (5th Cir. 1984) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)).  However, "[b]ecause 'legalistic wrangling' over the meaning of prison rules 'may visibly undermine the [prison] administration's position of total authority,' federal courts have deferred to the interpretation of those rules by prison authorities 'unless fair notice was clearly lacking.'"  Id. at 369 (quoting Hadden v. Howard, 713 F.2d 1003, 1008 (3d Cir. 1983)).

There is nothing in the language of the regulation that limits its application to mail sent by an inmate.  Having agreed to advise Mrs. Dunleavy in her SHLG business, it was foreseeable that Mrs. Dunleavy might use the mail to solicit such advice, in view of the fact that Petitioner is incarcerated and has few avenues of

---

[6] Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

communication. Accordingly, the Court concludes that fair notice was not clearly lacking under the plain language of the regulation and the circumstances presented, and the state court's application of the regulation to Petitioner comports with federal constitutional due process in the prison disciplinary context.

In sum, Petitioner has not shown that the state court's adjudication of his due-process claims were either contrary to, or an unreasonable application of, federal law.

### **Brady Violation (Petitioner's Ground 1)**

Respondent contends that Petitioner failed to exhaust his Brady claim in state court because he did not timely present it. Doc. 21 at 7. There are two prerequisites to federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." Upshaw v. Singletary, 70 F.3d 576, 578-579 (11th Cir. 1995) (citations omitted). This means that "a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)).

It is unnecessary to determine whether Petitioner has procedurally defaulted

this claim or has established sufficient cause and prejudice to cure the default, because the Court finds, as explained below, that the Brady claim may be denied on the merits.[7]

It is questionable whether Brady extends to prison disciplinary hearings. See Kenney v. Barron, 2007 WL 1793386 **1 (11th Cir. 2007) (unpublished) (declining to decide whether principles of Brady extend to prison disciplinary hearings where Petitioner did not establish that asserted Brady evidence was material).[8] To establish a Brady violation, Petitioner must show that (1) the institution possessed evidence favorable to his defense; (2) Petitioner did not possess such evidence and could not obtain it with reasonable diligence; (3) the evidence was suppressed; and (4) a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed. See id. (citing Moon v. Head, 285 F.3d 1301, 1308 (11th Cir. 2002).

The evidence that Petitioner asserts amounts to Brady material consists of additional investigative documents and information obtained during the course of Petitioner's administrative appeals. See Petition, Doc. 1 at 8. According to Petitioner, such information includes marketing material sent by Mrs. Dunleavy to other prisoners, and correspondence and information regarding another prisoner

---

[7]"An application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

[8]Pursuant to 11th Cir. Rule 36-2, unpublished opinions are not considered binding authority but may be cited as persuasive authority.

11

who received DR's in connection with an alleged scheme to sell his own for-profit prison legal guide, which Petitioner asserts was plagiarized from the SHLG. Petitioner suggests that the other inmate sought to retaliate against Mrs. Dunleavy and Petitioner. See id. Petitioner contends that, had such material been disclosed to him earlier, "such would have changed both [Dunleavy's and Petitioner's] statements to bear upon Petitioner being punished for Mrs. Dunleavy's mail to other prisoners which he had no knowledge of," and that such "suppression" "frustrated and thwarted Petitioner's ability to build a defense." Petition, Doc. 1 at 8.

Assuming that Brady applies in this context, even if prison authorities intentionally withheld such information from Petitioner, the evidence described does not come close to meeting the materiality standard necessary to establish a Brady violation. "[T]he materiality standard for Brady is met when the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Banks v. Dretke, 540 U.S. 668, 698 (2004). As described by Petitioner, the evidence does not contradict his own statements that he served as advisor to Mrs. Dunleavy in her efforts to publish and market the SHLG. Based on this evidence, relied on by the state court, there is no reasonable probability that disclosure of the material to Petitioner prior to his hearing would have changed the outcome of the proceeding in any way. Accordingly, Petitioner is not entitled to any relief on this claim.

## Bias During Administrative Review (Petitioner's Ground 2)

Petitioner asserts that he was denied due process during his administrative appeals because the prison officials who reviewed such appeals had a history of retaliating against Petitioner and were biased. Petition, Doc. 1 at 10. First, there is nothing in Wolff that requires administrative appellate review of a prison disciplinary proceeding. See Wolff, 418 U.S. 539, 563-66. Second, apart from his conclusional assertion of bias, Petitioner points to nothing in the record to suggest that any alleged deficiencies in the administrative review process call into question the reliability of the underlying disciplinary conviction. The state court applied Wolff to conclude that Petitioner had received all process due under the circumstances. Petitioner has not shown that the state court's adjudication of his claim was either contrary to, or an unreasonable application of, Wolff.

## First Amendment Violation

Petitioner contends that his disciplinary conviction unconstitutionally punishes him for exercising his First Amendment right to write a book, and amounts to retaliation for writing the SHLG and for filing grievances and lawsuits against prison officials. Petition, Doc. 1 at 11.

A prison inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Further, "[T]he First Amendment forbids prison officials from retaliating against prisoners for

exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003).

There is nothing in the state-court record that suggests that Petitioner was punished for writing a book. It is clear from the record that Petitioner's disciplinary conviction was founded on the use of the mail to facilitate his agreement to serve as an advisor to Mrs. Dunleavy in her marketing and publishing of the SHLG. The state court concluded that Petitioner had failed to demonstrate that he had any right to conduct a business through the mail while incarcerated. See Doc. 21-6 exh. 5. Petitioner has identified no authority holding that the legitimate penological objectives of the DOC do not extend to curtailing efforts by prisoners to conduct a business by mail. Accordingly, Petitioner has failed to show that the state court's adjudication of his First Amendment claim was either contrary to, or an unreasonable application of federal law.

As to Petitioner's retaliation claim, this Court has already rejected the claim on the merits in the civil rights action previously filed by Petitioner with regard to the same DR. See Self Help Legal Guides et al. v. Brogden et al., Case No. 5:03-cv-91, Doc. 136 at 8-9 (July 19, 2004). There is no basis for addressing the claim further in this case.

## **Conclusion**

For the foregoing reasons, the Petition is **DENIED**. The Clerk is directed

to enter judgment accordingly, terminate any pending motions, and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 28th day of March 2008.

_____
UNITED STATES DISTRICT JUDGE

c:  William Stewart Steele
    Counsel of Record